Judge Bi/okner,
delivered the opinion of the court.
Joseph Duncan died in 1822, in the county of Harrison, having first made his last will and testament, which was admitted to record in that county. Archibald Duncan, Washington Duncan and Claibourn Collier, were named as executors thereof, the first of whom alone, took upon himself the executorship.
He directs by his said will, that after his death, his slaves consisting of a man named Garrard, and two families with their children, should be manumitted; bnt his executors were first to receive the sum of $ 1200 from their services or hire, in the following proportions: *444 From the hire or services of Garrard .§200, from those of Nancy and her children §400, and from those of La-vina and her children £600; which sum of $¡L2J0, was to be divided into six equal parts, between his son Washingion Duncan, his daughters Lydia Mizner, Nancy Harris, Charlotte Parker and Sasanna Whitley,,, and the children of his son James Duncan, deceased.
Towards the close of the will, is the following clause 4iAs to the residue of my estate, not herein enumerated or devised, 1 give my executors full power over, to sell or distribute specifically, taking care to make an equal distribution among my living children, after all debte «nd demands against me are satisfied.” A
In January, 1826, Lydia Mizner, Washington Duncan, Samuel Harris and Ann his wife, instituted their bill in chancery, against Archibald Duncan the ex* ecutor, John Parker and Charlotte his wife, Daniel Whitley and Susanna his wife, and the heirs of James Duncan, deceased.
They charge the executor with a want of fidelity iri the management of the estate; and particularly, as it relates to the slaves; that he had paid the devisees no part of the money due to them, and was endeavoring to defiaud them of both that and the slaves, from whose services or hire he had received nothing, and was so managing them, that they were rather a charge* upon, than an advantage to the estate.
They pray for a decree against him, compelling him to pay to them and others entitled thereto, under the will, the specific legacies named therein, if ihe court should he of opinion,-that under the will, the slaves were entitled to their freedom; if not, to decree a distribution of them or of such of them, as were in this state among-those entitled to them, and that the executor should be answerable for some others which they allege he had permitted to go to the state of Ohio. They also pray, that if they were considered as entitled to the §1200, only charged on said slaves, the court would appoint a commissione--, to take possession of them, who should hire them out, according to the provisions of the will, until the sum charged on each should be raised;. and that the executor be compelled also, to distribute the amount of the residuary fund, left after the *445 payment of debts among them and the other devisees entitled thereto. ^
^ The persons named as defendants answered, and all except the executor, consented to the relief sought, and pray that they may have a decree for their portions.
He denied the charge of infidelity, insists that he had managed the estate of his testator vigilantly and with a desire to promo'e its interests. He says, that Gar-' rard had been manumitted by his testator, by an instru-ment of writing, properly admitted to record, long before his death, which insirument is mentioned in his will, but is there declared to be defective; that for the ,$C09 to be raised from Lavina and her children, he had taken the bond of one Spencer, with good sureties which he exhibited, and which was not then due,>that Nancy and her children had been regularly hired in-Harrison county, by persons of ability, to pay the’ amounts engaged to be paid, all of which had not been received.
Commissioners were appointed by the circuit court to make a settlement with said Archibald, who returned their report, by which it appears that each share of what was termed the residuary fund, amounted after the payment of debts, and making an allowance to the executor for his services, to the sum of ,$100 71 cents. They, therefore, allowed one share to Washington Dun.can, one to Lydia Mizner, one to Nancy Harris and her husband, one to Charlotte Parker and her husband, one to Susanna Whitley and her husband, and one to the executor Archibald, subject to deductions or credits for for money received by some of them from said executor, on that account.
The $ 1200, directed to be raised from- the hire of the slaves they allowed in equal portions to the persons named in the will as entitled thereto.
Upon a final hearing, the circuit court confirmed the report and decreed, that the executor should pay to Lydia Mizner §309 71 cents, to Parker and wife the same; to Washington Duncan the sum of $235 12¿ cents; to Harris and wife $300 71 cents; and that executions issue therefor, to be levied on the assets in his hands as executor, and that the complainants recover *446 against him their costs; that he should pay out of said, estate to the children and heirs of James Duncan, deceased, the sum of $200, and to Whitley and wife $217 4 cents, upon their giving bond, to refund their proporfons of any debts that might come against the estate of said Joseph Duncan deceased, and that no execution should issue for said sums decreed to Whitley and wire and the heirs of James Duncan, deceased, until the bonds requiied be given, and approved by the court.
In a rlecree for distribution. error, to permit execution to issue in favour of dis-tributees until they have executed bonds with surety to refund their rateable proportions of any debts, which may come against the estate of the testator. Such bond must be filed by leave of the court, and app overt by the court previous to the issuing of execution.
To reverse this decree, Archibald Duncan prosecutes .this wiit of error with supersedeas; assigning such errors as present the points necessary to be considered. We shall notice such only, as are deemed necessary to the decision of the case.
It was evidently erroneous to permit an execution to issue in favor of any of the parties named in the record, until they should execute bonds with surety to refund their rateable proportions, of any debts or demands wiiich might afterwards appear against the estate of the testator, and the costs attending the recovery of such debts; see the cause of Prewitt’s executor vs. Prewitt’s heirs, IV Bibb, 266, and of Middleton vs. Carrol, decided during the last term.
A bond of that description is copied into the record, which was prepared for L. Mizner, Harris and Washington Duncan, and for Lewis Saunders and Thomas Triplett, as their sureties; but it has the signature of Triplett only.
Whether it was marked as filed, does not appear from the record; nor is there any evidence that it properly constitutes a part of it. Such a bond ought to be filed by leave of, and approved by the court, previous to the issuing of executions; otherwise a party rmght slip into the record, a spurious bond, or paper purporting to be a bond; or get some person to join him as surety, who was entirely insufficient; and thereby defeat the purposes of justice.
The decree requires Whitley and wife, and the heirs of James Duncan, to enter into bond, with surety, &c. but contains no such repuisition, as to Parker and wife.
The allegations of the bill, with the proof in the cause, were obviously insufficient to authorize a decree *447 as to the §1200, for the hire of the slaves. It is expressly alleged in the bill, that the sum aforesaid, nor any part of it, had been received.
Decreefordis-¡■r‘!j"r,'tgXPCU tor'should be" against him in bis tndimdml oal)acIty’
All persons 'Js^crj^^r* affected by ° the decree, sbo,lbl be , tó'the suitf1
But had it been otherwise, the decree should have been entered against him in his individual capacity. The properly of his testator ought not to be sold in satisfaction of a decree for money, for which, if received by him, he was individually responsible. Yet, as executor, it is his duty to complain of the injustice of the decree, and to procure if to be rectified.
We will not say, that the proper parties were not before the court; but the bill was too indefinite and unsatisfactory, and leaves it at least doubtful, whether they were.
That part of the testator's estate, which was not specifically devised, was by the directions of the will to be equally divided among his living children. It does not appear from the bill, or any part of the record, how many living children the testator had, either at the date of the will, or at any subsequent period.
If he had any other, except those named in the bill, who had not been excluded by the will from a participation in the division under this residuary clause, he ought certainly to have been made a party; for all persons whose interests are to be affected by a dec ee, should be brought befoi^ the court pronouncing it, that they may have, an opportunity of being heard.
In the will, Collier, who was named as executor, is styled by the testator, “his son-in-law,” but whether his wife was living, is not shown. Besides, he devises to said Collier a female slave, which he observes, he had previously given to him, and which gift, he then confirmed, os his entire and full portion of his estate.
But whether the residuary clause, which succeeds this, is at war with it, so that they' cannot stand together, and that, therefore, the latter must prevail, according to the rule on that subject, it is unnecessary here to determine, as the question is not properly presented.
It is true, the bill alleges, that the complainants and Archibald Duncan, John Parker and Sally his wife, with Whitley and wife, are lawfully entitled to a particular *448 sum, as residuary7 legatees. But whether they be so or not, is a matter of law, depending upon facts which are not stated. When they are stated, the legal conclusion drawn, may prove to be entirely erroneous.
John Trimble, for plaintiff; Denny and Triplett, for •defendants.
The names of all the children of the testator, who were living at his deaih, should have been stated, thereby, to enable the court to determine who were properly embraced as legatees,by the residuary clause.
The decree, entered as it was, at the instance of the devisees, should have been so ordered, as to guard against a frustrad,on of the testator’s, kind and benevolent provisions in favor of his slaves.
The defendants in error, or such of them as were complainants in the circuit court, insist in their bill, (in violation of the well established doctrine, that a person shall not be permitted to claim under a will, whilst he at the same time resists its full effect,) that notwithstanding those provisions, the slaves should not be manured ted. Now, from the decree as it stands, they would be the subjects of levy under executions issued on it, and might be continued slaves for life, if sold. Such was not the intention of the testator; and the court ought not to enter a decree, which might, and probably would lead,to such unju-tand iniquitous consequences. The appraisement and list of sales of the property of the testator's esJate, show, that not one half of the amount of the decree, can life raised from the proceeds of it, iir any other way, than by a sale of them. They were not devised to any one, and as such were assets in the hands of the executor, for the payment of debts, if necessary.
The decree must be reversed and the cause remanded for further proceedings to be had, not inconsistent with this opinion.